UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CURTIS BROWN p/k/a GRAND MASTER CAZ,  :
and CHARLIE CHASE, collectively p/k/a THE
COLD CRUSH BROTHERS,                  :

              Plaintiffs,    :    **REPORT & RECOMMENDATION**

        -against-                :    03 Civ. 6570 (DAB)(KNF)

COLUMBIA RECORDING CORPORATION,       :

             Defendant.     :
------------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE DEBORAH A. BATTS, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Curtis Brown p/k/a Grand Master Caz and Charlie Chase, collectively p/k/a The Cold Crush Brothers ("plaintiffs") brought this action against defendant Columbia Recording Corporation ("CRC") to recover damages for infringement of the plaintiffs' copyrighted sound recording. The plaintiffs' claims are brought pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq. ("Copyright Act").

Upon the defendant's failure to answer or otherwise respond to the complaint, your Honor ordered that a default be entered against them. Thereafter, your Honor referred the matter to the undersigned to conduct an inquest and to report and recommend the amount of damages, if any, to be awarded against the defendant.

The Court directed the plaintiffs to serve and file proposed findings of fact and

1

conclusions of law, and an inquest memorandum setting forth their proof of damages, the costs of this action, and interest. The Court also directed the defendant to serve and file any opposing memoranda, affidavits and exhibits, as well as any alternative findings of fact and conclusions of law they deemed appropriate. The defendant did not file anything in opposition to the plaintiffs' submissions.

The plaintiffs' submissions aver that they are entitled to recover damages in the amount of $155,500 for the defendant's infringement of their copyrighted sound recordings.

## II. BACKGROUND

When a defendant defaults in an action, by failing to plead or otherwise defend against a complaint, the defendant is deemed to have admitted every well-pleaded allegation of the complaint except those relating to damages. See Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). In addition, the plaintiff is entitled to all reasonable inferences from the evidence presented. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). Based upon the submissions made by the plaintiffs, the complaint filed in the instant action, and the Court's review of the entire court file in this action, the following findings of fact are made.

The plaintiffs are musicians residing in the state of New York. Defendant CRC is a corporation organized and existing under the laws of the state of New York, with its principal place of business at 51 West 52nd Street, New York, New York.

The plaintiffs composed the music and lyrics to a work entitled "Freestyling." The plaintiffs then made a master sound recording of "Freestyling" on an album entitled "DJ Charlie Chase Cold Crush Brothers v. Fantastic Romantic 5 Live MC Battles from Harlem World 1981,"

published in June 1998. The United States Copyright Office granted the plaintiffs' application for a copyright for the master recording of "Freestyling," and assigned the recording Copyright Registration SR 327-188.

The group known as M.O.P. "digitally sampled" a portion of "Freestyling" in the master recording of their work "Old Timerz." Digital sampling is a technique whereby a portion of an already existing sound recording is incorporated into a new work. More specifically,

> [d]igital sampling has been described as:
>> the conversion of analog sound waves into a digital code. The digital code that describes the sampled music . . . can then be reused, manipulated or combined with other digitalized or recorded sounds using a machine with digital data processing capabilities, such as a . . . computerized synthesizer.
>
> Thus, digital sampling is similar to taping the original composition and reusing it in another context.

Jarvis v. A & M Records, 827 F. Supp. 282, 286 (D.N.J. 1993) (citation omitted); see also Dina LaPolt & Samuel J. Fox, Negotiating Music Samples, Entertainment Industry Contracts § 161.02[1][a] (2006) (defining a digital sample as "a portion of a pre-existing master recording which is extracted and embodied in a new master recording"). In this case, as a result of M.O.P.'s conduct, a person listening to "Old Timerz" will hear plaintiff Curtis Brown rapping the lyrics of "Freestyling" exactly as he can be heard on the original master sound recording of that composition. The "Old Timerz" track appears on an album entitled "Warriorz," which the defendant, CRC, distributed for sale to the general public following its release in October 2000.

The plaintiffs contend that because M.O.P. digitally sampled a portion of "Freestyling," CRC was required under the copyright statute to obtain from them two separate and distinct licenses: one for the master sound recording and one for the composition. In support of their

application for damages, the plaintiffs have submitted proposed findings of fact and conclusions of law, along with the declaration of Jay L. Berger ("Berger"), the agent and business manager for the plaintiffs and an expert in the area of licensing and the computation of royalties.[1]

### III. CONCLUSIONS OF LAW

A default judgment in an action establishes liability, but is not a concession of damages. See Cappetta v. Lippman, 913 F. Supp. 302, 304 (S.D.N.Y. 1996) (citing Flaks v. Koegel, 504 F.2d 702, 707 [2d Cir. 1974]). Damages must be established by a plaintiff in a post-default inquest. See id. In conducting an inquest, a court need not hold a hearing "as long as it [has] ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). The court may rely on affidavits or documentary evidence in evaluating the fairness of the sum requested. See Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993).

Under the Copyright Act, "an infringer of copyright is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer, as provided by [§ 504(b)]; or (2) statutory damages, as provided by subsection [§ 504(c)]." 17 U.S.C. § 504(a). Actual damages are measured by "the extent to which the market value of the copyrighted work at the time of the infringement has been injured or destroyed by the infringement." Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc., 807 F.2d 1110, 1118 (2d Cir. 1986)(citation omitted). In appropriate circumstances, actual damages may be taken to be a reasonable license fee, that is,

---

[1]Berger avers that because he acts as a representative for the plaintiffs, he is not receiving compensation for his preparation and submission of an opinion in this matter. See Berger Declaration, ¶ 22 at 4.

the fair market value of a license authorizing the defendant's use of the copyrighted work. See On Davis v. Gap, Inc., 246 F.3d 152, 164-168 (2d Cir. 2001). This measure of damages contemplates "a negotiation between a willing buyer and a willing seller," and does not depend on whether the copyright infringer was *in fact* willing to negotiate for a license. Id. at 172. Rather, "[an] honest purchaser is hypothesized solely as a tool for determining the fair market value of what was illegally taken." Id.

In some instances, courts have relied on expert testimony to determine the fair market value of a reasonable license fee. See, e.g., Stehrenberger v. R.J. Reynolds Tobacco Holdings, Inc., 335 F. Supp. 2d 466, 467-68 (S.D.N.Y. 2004) (approving calculation made by plaintiff's damages expert for use of artwork while disapproving additional fee for unauthorized usage); Barerra v. Brooklyn Music, Ltd., 346 F. Supp. 2d 400, 410 (S.D.N.Y. 2004) (using calculation of plaintiff's expert to determine reasonable license fee for use of stock photograph); cf. Baker v. Urban Outfitters, Inc., 254 F. Supp. 2d 346, 352-59 (S.D.N.Y. 2003) (evaluating but excluding testimony and report of plaintiff's expert and relying instead on plaintiff's past license fees); Country Road Music, Inc. v. MP3.com, Inc., 279 F. Supp. 2d 325, 331 (S.D.N.Y. 2003) (excluding report and testimony of plaintiff's expert but concluding record may contain other evidence in support of actual damages claim).

Rule 702 of the Federal Rules of Evidence provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Furthermore, the Supreme Court has explained that "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand" is to be performed by a court. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597, 113 S. Ct. 2786, 2799 (1993). Each step of an expert's analysis must be reliable in order for the expert's testimony to be considered in a judicial proceeding. Amorgianos v. National R.R. Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002). However, "[a] minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissable." Id. Further, "[a]lthough expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison, other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996)(citations omitted)(internal quotation marks omitted).

Plaintiff's expert, Berger, has three years of experience negotiating and drafting various types of music industry licenses. For example, during that period, Berger reviewed and/or negotiated more than three hundred songwriter contracts and master license use and sample use agreements for master recordings and compositions. In addition, Berger reviewed more than one thousand artist, songwriter and publisher royalty reports from record companies and performing rights societies. Berger is the co-author of an article on recent judicial developments in copyright infringement treatment for the digital sampling of music, see Oren J. Warshavsky & Jay L. Berger, Will Case Change Law on Sampling, 26 Nat'l L. J. C1 (2002), and has provided expert testimony and reports on the issues of, *inter alia*, music licensing, compensation for the licensing

6

of master recordings and musical compositions, and artists' rights, copyright ownership and apportionment of royalties in cases brought in both the federal and state courts. See Berger Declaration, ¶¶ 7-16 at 2-4. The Court finds that Berger has sufficient knowledge, skill and experience in the area of licensing copyrighted material to qualify him to provide an opinion about a reasonable license fee for the defendant's use of the plaintiffs' sound recording.

According to Berger, under the copyright law "there are two different and distinct sets of rights: the right to the musical composition [the written lyrics and the accompanying music], and the rights to the sound recording of the musical composition." Berger Declaration, ¶ 24 at 5; see also T. B. Harms Co. v. Jem Records, Inc., 655 F. Supp. 1575, 1577 n.1 (D.N.J. 1987)("When a copyrighted song is recorded on a phonorecord, there are two separate copyrights: one [in] the musical composition and the other in the sound recording.")(citing N. Boorstyn, Copyright Law Section 5:11 n.54 [1981 & Supp. 1986]). Thus, in order to use a digital sample without violating the Copyright Act, an artist must obtain two different licenses: one from the owner of the master recording and one from the owner of the copyright to the underlying composition. See Berger Declaration, ¶ 26 at 5-6. An SR copyright, such as the plaintiffs were granted, covers both a sound recording and a musical composition. See, e.g. Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Publ'g Inc., 75 F. Supp. 2d 242, 247 (S.D.N.Y. 1999).

Based on his experience negotiating and drafting master use licenses for sound recordings and compositions on behalf of his company's clients, Berger calculates that a typical license fee for the right to use a master sound recording ranges from five cents ($0.05) to eight cents ($0.08). Further, Berger estimates that, in the circumstances presented here, a typical license fee for use of

a musical composition ranges from 3.7 cents ($0.03775) to 7.5 cents ($0.0755).[2] Additionally, according to Berger, in negotiating a contract for a license, customarily he would demand a non-refundable advance based on either 500,000 or 1,000,000 units, as an initial payment. When a sample is "uncleared," that is, when a defendant seeks licenses for a master recording and composition after an infringing work has been released to the general public, the amount of the advance is based on 1,000,000 units. See Berger Declaration, ¶¶ 34-36 at 7.

Drawing on his knowledge of typical licensing arrangements, Berger concludes that a reasonable license fee in this case is between $87,750 (i.e., an advance against 1,000,000 units, $0.05 for the master royalty rate and $0.03775 for the composition royalty rate) and $155,500 (i.e., an advance against 1,000,000 units, a master royalty rate of $0.08 per unit and a composition royalty of $0.0755 per unit). See id. ¶¶ 37-38 at 8.

The analysis performed by Berger to compute a reasonable license fee, or range of fees, is one that reliably could be expected to determine the value of a license for the use of a digital sample of a sound recording. Additionally, because Berger is an agent for the plaintiffs and other copyright owners, and has established rates that are regularly paid by licensees, his method for determining a reasonable license fee is particularly relevant in this case. See Davis, 246 F.3d at 167 (noting that reliance upon royalty rates established by agents for copyright owners renders determination of the fair market value of a license fee "no more speculative than determining the damages in the case of a stolen cargo of lumber or potatoes"). Moreover, Berger relied on materials pertinent to this action in the application of his usual method of calculating a license

---

[2] According to Berger, the license fee, or royalty rate, for a musical composition usually is determined by statute, see 37 C.F.R. § 255.3(j). However, the compulsory royalty rate established by statute is available only under conditions that are not applicable in this case.

fee for the use of a digital sample. Accordingly, the Court finds that Berger computed the range of reasonable license fees through the application of reliable principles and methods, and with sufficient bases in fact.

Plaintiffs seek the maximum royalty of $155,500. The Second Circuit has ruled that an award of actual damages in a copyright infringement case "should be broadly construed to favor victims of infringement." See Davis, 246 F.3d at 164 (citing, *inter alia*, William F. Patry, Copyright Law and Practice 1167 [1994] ["Within reason, any ambiguities should be resolved in favor of the copyright owner."]; 4 [Melville B. Nimmer & David Nimmer, Nimmer on Copyright] § 14.02[A], at 14-12 ["[U]ncertainty will not preclude a recovery of actual damages if the uncertainty is as to amount, but not as to the fact that actual damages are attributable to the infringement."]). Hence, when a court is confronted with imprecision in the calculation of damages, it "should err on the side of guaranteeing the plaintiff a full recovery." Sygma Photo News, Inc. v. High Society Magazine, 778 F.2d 89, 95 (2d Cir. 1985)(citations omitted). Under the circumstances, the Court finds that an award representing a full recovery is appropriate in this case. Accordingly, the plaintiffs are entitled to actual damages in the amount of $155,500.

## IV. RECOMMENDATION

For the reasons set forth above, the Court recommends that the plaintiffs be awarded $155,500, plus post-judgment interest in an amount to be calculated by the Clerk of Court pursuant to 28 U.S.C. § 1961(a).

\* \* \*

The plaintiffs shall serve a copy of this Report and Recommendation upon the defendant and submit proof of service to the Clerk of Court.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of the Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Deborah A. Batts, United States District Judge, 500 Pearl St., Room 2510, New York, New York 10007, and to the chambers of the undersigned, 40 Centre St, Room 540, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Batts. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Candair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1998); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
July 24, 2006

Respectfully submitted,

_/s/ Kevin Nathaniel Fox_
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Mailed copy to:
Oren J. Warshavsky, Esq.